UNION COUNTY TRUST COMPANY,
Plaintiff,

v.

SUN CHEMICAL CORPORATION,
Defendant.

Civ. A. No. 19519.

United States District Court
E. D. Pennsylvania.

March 5, 1958.

John A. Eichman, 3rd, Philadelphia, Pa., for plaintiff.

Paul & Paul, Philadelphia, Pa., for defendant.

WHAM, District Judge.

Having studied the pleadings and evidence in the above case together with the briefs and arguments of counsel the Court makes the following Findings of Fact and Conclusions of Law.

I. Findings of Fact

1. Plaintiff is a New Jersey corporation having its principal office at 142 Broad Street, Elizabeth, New Jersey.

2. Defendant, formerly the General Printing Ink Corporation, is a Delaware corporation duly authorized to do business in the State of Pennsylvania, having one of its places of business at 29 North Sixth Street, Philadelphia, Pennsylvania.

3. The amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

4. On or about October 16, 1933, General Printing Ink Corporation, defendant's predecessor, entered into an Agreement with Harry C. Jones as of September 1, 1933, which Agreement was thereafter amended by letters dated November 27, 1933, September 4, 1935, September 30, 1935, March 23, 1938 and March 28, 1942, which Agreement as amended (hereinafter sometimes called Agreement) which is set forth in full in Exhibits A to F attached to plaintiff's original complaint, contained the understandings between the parties hereto and/or their predecessors in interest with respect to certain patents and inventions of the said Harry C. Jones.

5. On or about October 2, 1938, the said Harry C. Jones died a resident of Nassau County, New York, leaving a last will and testament under which his entire estate was left to his widow, Mabel Dean Jones, including, inter alia, his interest in the aforesaid Agreement.

6. On or about April 6, 1948, the said Mabel Dean Jones assigned and transferred all of her interest in and under said Agreement, and the patents involved therein, to the Union County Trust Company, plaintiff herein, as trustee, to collect the sums due under said Agreement

and distribute the same as provided therein.

7. The original Agreement above referred to prior to amendment reads in part as follows:

" * * * 1. The Licensor agrees to grant and he hereby does grant unto the Licensee, the sole and exclusive license, right and privilege to make, use, and/or sell anywhere in the entire world throughout the life of this agreement, all machinery, equipment, devices and/or any other property embodying the Inventions of or covered by any and all of the following described patents and patent applications:

\* \* \* \* \*

"U. S. Application Serial No. 356,326, filed April 19, 1929, Apparatus for securing registration position of an article.

\* \* \* \* \*

"U. S. Application Serial No. 458,789, filed May 31, 1930, Photographic Machines.

\* \* \* \* \*

"3. The Licensor agrees to grant and he hereby does grant unto the Licensee the option of acquiring under the terms, covenants and conditions of this agreement the sole and exclusive license, right and privilege to make, use and/or sell anywhere in the entire world throughout the life of this agreement all machinery, equipment, devices and/or any other property embodying the Inventions of or covered by any or all Patent Applications relating to Photo-Composing Machines and Apparatus which may hereafter be filed anywhere in the entire world by the Licensor or on his behalf. Such option may be exercised from time to time and the manner of exercise thereof by the Licensee shall be by mailing to the Licensor notice in writing of its election to exercise the same within four (4) months after the disclosure of such application to the Licensee by the Licensor.

"4. The Licensor's compensation for the licenses and options referred to in paragraphs 1 and 3 hereof shall be as follows:

"(a) For a period of two (2) years from September 1, 1933, the Licensee shall pay to the Licensor the sum of Six Thousand Dollars ($6,000.) per annum, payable in installments of Five Hundred Dollars ($500.) each on the last day of each and every month during the said two (2) year period, the first installment to be paid on September 30, 1933, and the last installment to be paid on August 31, 1935.

"(b) In addition to the sum mentioned in sub-paragraph (a) of this paragraph, the Licensee shall pay to the Licensor from September 1, 1933 and as long as the licenses referred to in paragraphs 1 and 3 hereof remain in force (except as provided in sub-paragraph (c) of this paragraph), four and one-half per centum (4½%) of the net receipts from any and all sales or rentals made by the Licensee of the following property:

"(1) Contact Photo-Composing Machines, whether invented or not invented by the Licensor, for making offset printing plates and for producing multiple and group negatives. \* \* \*

\* \* \* \* \*

"5. The licenses referred to in paragraph 1, paragraph 3 and paragraph 10 hereof shall remain in full force and effect from the date of this agreement, or the effective date of the license as the case may be, and throughout the life of that patent covered or which may be covered by this agreement and which is the last to expire. Provided, however, that the Licensee may terminate this agreement and the licenses, rights and obligations hereunder at the end of the second or any subsequent year from the date of this agreement by giving notice to the Licensor in writing of its intention so to do not less than three (3) months before the end of said second or subsequent year. Such or any termination of this agreement or the termination of any provision hereof or the removal of any patents from the scope of this agreement shall not, however, ter-

minate paragraph 20 of this agreement which shall remain in full force and effect. The Licensee shall also have the option, by notice in writing during the period of the prosecution of any and all patent applications covered or which may be covered by this agreement and until three (3) months after the issuance of any patent on the same, to cancel and terminate its license under said patent and/or application therefor and to remove the same from the scope of this agreement, provided, however, that such cancellation and termination shall not become effective until thirty (30) days after the giving of such notice and that such cancellation and termination shall not affect the payment of royalties on account of sales and rentals made up to the date when it becomes effective.

\* \* \* \* \*

"16. The Licensee guarantees to the Licensor that the total amount to be paid to the Licensor in or in lieu of all royalties under this agreement including, but without limitation, paragraphs 4(b), 4 (c) and 11 in respect of sales and rentals made during each year of the third and each succeeding year of this contract shall be at least Six Thousand Dollars ($6,000.). Said $6,000. shall be payable during the year in question and in monthly installments of Five Hundred Dollars ($500.) each on the last day of the month. \* \* \* "

8. Sub-paragraph (c) of Paragraph 4, and also Paragraph 10 referred to in the above-quoted portions of said original Agreement contain provisions which do not bear on issues immediately involved here.

9. The aforesaid Letter Agreement dated September 30, 1935, reads in part as follows:

"\* \* \* 4. We hereby exercise our option in paragraph 3 of our agreement dated as of September 1, 1933, to cover your Canadian Application No. 419,343 and any patents in respect to it under said agreement, and you agree that said application and patent are hereby covered under said agreement, but you also agree to relinquish all claim to the $150. license fee or any other special license fee in respect to said application and patent. You also agree that hereafter whenever you make application without instruction from us to do so for a patent in any country in the world covering claims which are substantially identical with claims in any patent or patent application then already covered under our said agreement, and in case we elect to cover such patents or applications under said agreement, then in such event you will make no claim for the $150. license fee or any other special license fee or fees in respect to such patents or patent applications. You hereby waive and release all claim and right to any and all special license fees in such cases. \* \* \* "

10. By the aforesaid Letter Agreement dated March 23, 1938, the methods of computing royalties and of accounting therefor were changed. Paragraphs 6 and 7 thereof read as follows:

"6. Our letters to you dated November 27, 1933, September 4, 1935 and September 30, 1935 which were accepted by you and became amendments of the agreement dated as of September 1, 1933, are hereby cancelled, such cancellation, however, to be effective only so far as any matters hereafter are concerned, and excepting paragraph 4 of our letter dated September 30, 1935 which paragraph is to continue in full force and effect.

"7. The above provisions shall supplement and amend said agreement between us dated as of September 1, 1933 and continue in effect during the continuance of said agreement. Except as expressly amended by this agreement, all the terms, covenants, conditions and provisions of our agreement dated as of September 1, 1933, as amended by paragraph 4 of our letter dated September 30, 1935, shall remain in full force and effect."

11. The body of the aforesaid Letter Amendment dated May 28, 1942, reads as follows:

"Confirming our understanding, you and we in consideration of each other's agreement herein mutually agree as follows in respect to the license agreement between Harry C. Jones and General Printing Ink Corporation, dated as of September 1, 1933, as amended by paragraph 4 of a letter dated September 30, 1935, and as amended by a letter dated March 23, 1938:

"1. We agree not to terminate the above described agreement at the end of the contract year ending September 31, 1942. However, it is mutually agreed that our right to terminate said agreement as set forth in paragraph 5 thereof shall otherwise remain in full force and effect.

"2. Effective September 1, 1942, and for the duration of the present war involving this Country and Germany, Japan and/or Italy, it is mutually agreed that paragraph 16 of said agreement shall be amended so as to read as follows:

" 'The Licensee guarantees to the Licensor that the total amount to be paid to the Licensor in or in lieu of all royalties under this agreement including, but without limitation, paragraphs 4(b), 4(c) and 11 in respect of sales and rentals made during each year of the third and each succeeding year of this contract shall be at least Twenty-Four Hundred Dollars ($2400.). Said $2400. shall be payable during the year in question and in monthly installments of Two Hundred Dollars ($200.) each on the last day of the month. In the event that such royalties due on sales and rentals made during the year in question do not equal $2400. during such year, the Licensee shall reimburse itself out of royalties next subsequently due in respect to payments on sales and rentals made during the year in question. In the event that the aggregate royalties due on such sales and rentals made in the year in question up to the last day of any month in the year in question exceeds the aggregate monthly guarantees, only royalties due shall thereafter be paid until they in the aggregate fall below the aggregate monthly guarantees. In the event that the aggregate monthly guarantees up to the last day of any month in the year in question exceeds the aggregate royalties due, only the monthly guarantees shall thereafter be paid until they in the aggregate fall below the aggregate royalties due. The Licensee does not guarantee any amount of operations or volume of sales or rentals. The above guarantee shall be upon or in lieu of royalties on sales and rentals made during each year without relation to sales and rental in any other year.'

"Upon termination of the war with said countries said paragraph 16 shall revert to its form existing immediately before the execution of this amendment.

"3. Except as expressly amended in this letter, all of the terms, covenants, conditions and provisions of said agreement, dated as of September 1, 1933, amended as above set forth, shall remain in full force and effect.

"If the above meets with your approval, will you please sign the acceptance below and on the enclosed duplicate and return one original signed letter to us, whereupon the above will become binding.

"Very truly yours,
General Printing Ink Corporation
By /s/ ~~Mabel Dean Jones~~
By /s/ Perry D. Richards
Executive Vice President
"Accepted: Date May 28, 1942
Estate of Harry C. Jones
By /s/ Mabel Dean Jones
Executrix
/s/ Mabel Dean Jones
(Mabel Dean Jones, Individually)"

12. Following the execution of the aforesaid Declaration of Trust, the defendant continued to render monthly

statements to plaintiff purporting to cover all sales affected and paid royalties shown due thereunder until on or about February 26, 1952.

| Country | Reg. No. | Ser. No. | Issue Date | Expiration Date |
|---|---|---|---|---|
| U. S. | 1,992,621 | 458,789 | Feb. 26, 1935 | Feb. 26, 1952 |
| U. S. | 2,000,520 | 356,326 | May 7, 1935 | May 7, 1952 |
| Canada | 356,880 | 419,343 | March 31, 1936 | March 31, 1954 |

13. The only patents licensed by the Agreement, or amendments thereto, which had not expired prior to February 26, 1952, are identified as follows:

14. The photo-composing machines and apparatus manufactured and sold or rented by the defendant after February 26, 1952, were not covered by U. S. Patent No. 2,000,520.

15. The disclosures in U. S. Patent No. 1,992,621 and Canadian Patent No. 356,880 were the same and involved photo-composing machines.

16. Between February 26, 1952, and March 31, 1954, the defendant paid to plaintiff royalties on its Canadian sales or rentals of photo-composing machines or apparatus or paid to defendant $200 per month as a minimum royalty as shown in the following schedule:

| Month | Year | Amount |
|---|---|---|
| March | 1952 | $ 3.52 |
| April | 1952 | 1.10 |
| May | 1952 | 26.56 |
| June | 1952 | 35.54 |
| July | 1952 | 1.70 |
| August | 1952 | 3.95 |
| Sept. through Dec. | 1952 | 200.00 per month |
| Jan. through Dec. | 1953 | 200.00 per month |
| Dec. through March | 1954 | 200.00 per month |

17. Except for an adjustment to correct errors in the Canadian royalties, defendant did not account for or make payments on account of the minimum guarantee or royalties on any sales or rentals of photo-composing machines or apparatus during said period other than those above listed.

18. By letter dated February 12, 1952, defendant advised plaintiff that the aforesaid Agreement would cease when U. S. Patent No. 1,992,621 expired on February 26, 1952, as the said patent was the only one under which the defendant was then manufacturing and selling. Subsequently this position was changed to admit an obligation for payment of royalties on Canadian sales only, or a $200 per month minimum.

19. Defendant admits that proper and timely objections were made on plaintiff's behalf to defendant's position with respect to its obligation to pay royalties under the Agreement, as amended after February 26, 1952.

II. Conclusions of Law

1. The matter is properly before the Court.

2. The minimum annual royalties due under the Agreement, as amended, for all years in question was $6,000, payable $500 per month, as the War referred to between United States and Germany,

Japan and/or Italy had terminated within the meaning of the Amendment dated May 28, 1942, prior to September 1, 1951.

3. Under the Agreement dated September 1, 1933, as amended, defendant was and is obligated to pay royalties on the sale and/or rental by defendant of all photo-composing machines and apparatus as defined in said Agreement, as amended, or to make payments under the minimum royalty provision thereof at the above-mentioned monthly rate, whichever is applicable, until the expiration of March 31, 1954, of the last patent covered by said Agreement.

4. Plaintiff is further entitled to interest on all balances that may be found due from the dates they respectively became due until payment, and costs in this suit.